UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRITTANY COLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:14-cv-00956-JMS-DML |
| ) | |
| KATHLEEN LANDRUM Family Case ) | |
| Manager, ) | |
| MIKE ABELL Supervisor, ) | |
| HIWOT SEIFU DCS Worker, ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Brittany Coley brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated her Fourteenth Amendment due process rights and her Fourth Amendment right to be free from unreasonable searches and seizures. The defendants move for summary judgment and Coley has responded. For the following reasons, the defendants' motion for summary judgment [dkt 113] is **granted**.

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the

fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)(quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)) (other citations omitted); *see also Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898.

## II. Facts

On January 16, 2014, Coley struck her eleven-year-old son D.C. with an oven or refrigerator door handle approximately six times. The next day at school, D.C. asked his teacher for an icepack. Noticing swelling and lumps on D.C.'s body, the school conducted an investigation

and reported the incident to the Indiana Department of Child Services ("DCS"). DCS employee Mike Abell, a Family Case Manager, assigned Kathleen Landrum to investigate. Landrum went the school and performed an assessment that day. Landrum called Coley several times while she was at the school and was not able to reach her.

     Abell instructed Landrum to consult a pediatrician for advice on D.C.'s injuries. Landrum contacted Dr. Ralph Hicks of the Riley Child Protection Team regarding D.C.'s injuries. Dr. Hicks advised that D.C. should be brought to the emergency department for evaluation. Landrum then spoke to Coley on the telephone and told her that D.C. was being transported to Riley Hospital for Children for an x-ray of his arm. Coley stated she would meet Landrum at the hospital. After Coley arrived at the hospital, she admitted that she "whoops" her children with a belt and had whooped D.C. with the door handle. Landrum developed a safety plan with Coley which included not using excessive physical discipline with the children using any object that can result in bruises, lumps or injury. When discussing the safety plan, Coley indicated it was not against the law for D.C. to have a mark on him from a whooping. She stated she could whoop with a belt. Landrum informed Coley that she could not tell Coley to use a belt to discipline her children, and that DCS advised parents administering punishment to use an open hand on the bottom that does not leave marks or bruises. Coley refused to include that in the safety plan because she believed disciplining with only an open hand is not the law, just the preference of DCS.

     Based on the exam and x-rays, Dr. Hicks determined that D.C.'s wrist was not fractured, but there were areas of soft tissue swelling and tissue injury that could be seen on the x-rays. Dr. Hicks informed Landrum that the signs of physical abuse were obvious and characteristic of

physical abuse and that he had concerns about the risk factors for D.C. and the other children in the home.

Based on her assessment, which included Dr. Hicks's determinations, interviews of D.C., his younger brother Dm. C., and Coley, Landrum created a report titled "Assessment of Child Abuse or Neglect." Based on Landrum's report, Abell and Landrum determined that removal of Coley's four children from the home was necessary. A court order could not be obtained at that time because the courts were closed for the holiday weekend. The children were transported by relatives to the local DCS office to facilitate a visit with Coley while the DCS relative placement staff contacted Coley's sisters to determine if relative placement was an option for placement of the children. After relative placement was determined not to be appropriate, Coley's children were placed in foster care (non-relative placement).

Thereafter, Landrum prepared and signed an Intake Officer's Report of Preliminary Inquiry and Investigation for the initial detention hearing in the Child in Need of Services proceedings. On January 22, 2014, DCS filed a Verified Petition Alleging Children to be in Need of Services ("CHINS Petition"). The juvenile court granted DCS's request to file a CHINS Petition and found probable cause to believe that Coley's children were in need of services because they were seriously endangered. The juvenile court set the matter for initial hearing on January 22, 2014.

On Wednesday, January 22, 2014 at 1:30 PM, the juvenile court held a detention hearing. Coley was appointed a public defender at the initial hearing. The juvenile court ordered the continued removal of the children from the care of Coley, but authorized supervised parenting time. The juvenile court found that the detention hearing was not being held more than forty-eight hours, excluding weekends and holidays, after the children were taken into custody. The juvenile

court held that removal was necessary and in the best interests of the children, that remaining in the home would be contrary to the health and welfare of the children and due to the emergency nature of the situation, no reasonable efforts could be made to prevent the removal of the children.

On February 5, 2014, the juvenile court continued the Coley children's placement in foster care. By February 15, 2014, all four children were moved from foster care to relative care placement with Coley's sisters. On March 17, 2014, a fact-finding hearing was held in the CHINS proceedings. At the close of the hearing on March 17, 2014, the court took the matter under advisement and ordered that the children be returned to Coley's care on a temporary trial visit ("TTV"). The children were returned to Coley's care pursuant to the court order.

On March 23, 2014, Coley was charged with a class D felony, battery on a child with injury, in Marion County. According to the probable cause affidavit, Detective Christopher Lawrence received Form 310 on January 23, 2014 which indicated D.C. had been struck by his mother and injured. Detective Lawrence reviewed the DCS report, D.C.'s letter and also relied on Landrum's interviews of D.C. and Coley. On January 30, 2014, the children were forensically interviewed. On March 11, 2014, Detective Lawrence personally interviewed D.C.'s teacher, Brian Dinwiddie.

On April 9, 2014, the juvenile court issued its order based on the fact-finding hearing finding the children not in need of services at that time. The juvenile court made no finding as to whether or not Coley's discipline of D.C. was unreasonable or excessive. After a one-day jury trial in the criminal case on February 12, 2015, Coley was found not guilty of battery on a child with injury. Coley testified and admitted to striking her son with the handle, but asserted the defense of reasonable corporal punishment.

## IV. Discussion

Coley's claims are that defendants Landrum, Abell, and Seifu violated her Fourth Amendment rights and her rights to due process and when removing her children from her custody. The defendants argue, among other things, that because Coley herself was not seized, she cannot pursue a Fourth Amendment claim and that her due process claims are barred by the doctrine of issue preclusion. In response, Coley argues that the defendants fabricated probable cause and that there was in fact no probable cause to remove her children. Because, as discussed below, Coley cannot bring a Fourth Amendment claim and because issue preclusion bars Coley's due process claims entirely, the Court need not address the defendants' remaining arguments.

A. *Fourth Amendment Claims*

The defendants seek summary judgment on Coley's Fourth Amendment claim because she was not seized for purposes of the Fourth Amendment. The Fourth Amendment protects a person's right to be free from unreasonable searches and seizures. *See United States v. Mendenhall*, 446 U.S. 544, 550 (1980). A person is "seized" for purposes of the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554. Coley's complaint is not that she was seized, but that her children were. But her children's Fourth Amendment rights belong to them, not Coley. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 480 (7th Cir. 2011). Coley's claim based on the acts at issue is therefore properly analyzed under substantive due process, not the Fourth Amendment. *See id.* Because Coley cannot base a Fourth Amendment claim on the seizure of her children, the defendants are entitled to summary judgment on this claim.

6

B. *Due Process Claims*

The defendants also argue that Coley's due process claims are barred by the doctrine of issue preclusion. "Issue preclusion prevents a party from relitigating an issue that it has previously litigated and lost." *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002). Federal courts apply the law of issue preclusion applicable in the state in which the previous judgment was issued. *Id.* In Indiana, to determine "whether issue preclusion is applicable, a court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply issue preclusion given the facts of the particular case." *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013). The court should also consider the following factors: "(1) privity, (2) the [party's] incentive to litigate the prior action, and (3) the ability of the plaintiff to have joined the prior action." *Id.*

To decide whether issue preclusion applies, the Court must initially determine whether the issue was previously litigated. Coley's claim is that the defendants violated her Fourteenth Amendment rights when they removed her children from her care.[1] Coley can succeed on this claim only if this Court finds that the removal took place without probable cause. *See Jensen v. Foley*, 295 F.3d 745, 748-49 (7th Cir. 2002) (plaintiff's claims based on alleged improper removal of their child can only succeed of no probable cause existed to remove the child). Because the juvenile court already found that probable cause existed to remove the children, this issue has already been decided. In considering the detention of the children, the juvenile court found that probable cause existed to find that the children were in need of services and that detention was

---

[1] Coley also suggests in her response to the motion for summary judgment that the defendants' actions constituted retaliation against her. But she did not raise a retaliation claim in her complaint and the Court will not now read a retaliation claim into her Amended Complaint.

7

necessary. The probable cause finding was material to the court's order. This conclusion is based on Indiana law governing removal of children, which provides:

> a child may be taken into custody by a law enforcement officer, probation officer, or caseworker acting with *probable cause* to believe the child is a child in need of services if: (1) it appears that the child's physical or mental condition will be seriously impaired or seriously endangered if the child is not immediately taken into custody; (2) there is not a reasonable opportunity to obtain an order of the court; and (3) consideration for the safety of the child precludes the immediate use of family services to prevent removal of the child.

Ind. Code § 31–34–2–3 (emphasis added). In finding probable cause and ordering the continued removal of the children, the juvenile court held that "removal of the [Coley children] was necessary to protect the children," "it is in the best interest of [the children] to be removed from the home environment," "remaining in the home would be contrary to the health and welfare of [the children]," and "due to the emergency nature of the situation, no reasonable efforts could be made to prevent removal of [the children]." Because a critical element of Coley's claims – whether probable cause existed to remove her children – has already been decided by a state court, it will be preclusive of Coley's claims if the factors governing issue preclusion in Indiana apply. *See Jensen*, 295 F.3d at 749.

The first element of issue preclusion is whether Coley had a full and fair opportunity to litigate the claim at the time of the probable cause determination. *Angelopoulos*, 2 N.E.2d at 696. Coley was present at the detention hearing and represented by a public defender. While she argues that the evidence presented at the hearing to support the detention of her children was misleading and deceptive, she does not identify with specific evidence any false statement. More importantly, Coley does not show, or even argue, that she did not have an opportunity to be heard at that hearing. It is therefore undisputed that Coley had a full and fair opportunity to litigate the issue of probable

cause in the juvenile court. Once the Court determines that the litigant previously had a full opportunity to be heard, the Court asks whether it is otherwise unfair to apply issue preclusion to this case. *Angelopoulos*, 2 N.E.2d at 696. There is nothing in the record that would indicate any reason that it would be unfair to apply issue preclusion to this case. Finally, in considering whether to apply issue preclusion, the Court also considers: "(1) privity, (2) the [party's] incentive to litigate the prior action, and (3) the ability of the plaintiff to have joined the prior action." *Angelopoulos*, 2 N.E.2d at 696. Because Coley was closely involved in the prior action and had significant incentive to litigate it, these factors also weigh in favor of applying issue preclusion to her claims.

In short, the juvenile court found probable cause existed to support the removal and continued detention of Coley's children. Because a determination that probable cause did not exist is required for Coley to prevail on her claims in this case, Coley is barred by the doctrine of issue preclusion from raising those claims here. *See Jensen*, 295 F.3d at 749; *Chalmers v. Ozaukee Cty.*, No. 13-CV-686, 2015 WL 1219594, at *3 (E.D. Wis. Mar. 17, 2015) (state court's finding of probable cause was dispositive of federal claim that removal of children violated the plaintiff's due process right to familial integrity). The defendants are therefore entitled to summary judgment.

### V. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment [dkt 113] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: September 15, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BRITTANY COLEY
PO Box 88703
Indianapolis, IN 46208

All electronically registered counsel